IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAKUR COBBS GANNAWAY, *et al.*, | No. 4:24-CV-02115 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| GOURLEY, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

APRIL 8, 2025

Plaintiff Shakur Cobbs Gannaway lodged the instant *pro se* civil rights lawsuit in December 2024, presumably asserting claims under 42 U.S.C. § 1983.[1] Following substantial procedural difficulties, his complaint is properly before the Court for screening as required by 28 U.S.C. § 1915A(a). Because Gannaway fails to state a claim for relief, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1) but will grant him leave to amend.

**I.     BACKGROUND**

Since lodging his "criminal complaint,"[2] which the Court liberally construes as a civil rights lawsuit, Gannaway has struggled to comply with Court orders and

---

[1]   Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]   Doc. 1.

to take necessary steps to pursue his lawsuit.  The Court need not rehash those procedural difficulties, as they are outlined in detail in the Court's February 12, 2025 Memorandum Opinion and Order.[3]  Gannaway has, at last, properly moved for leave to proceed *in forma pauperis* and submitted the statutorily mandated initial partial filing fee.  His complaint is now before the Court for mandatory screening under 28 U.S.C. § 1915A(a).

Gannaway's complaint is difficult to follow.  As noted in the Court's February 12 Memorandum, his disjointed allegations involve (1) purported legal mail tampering, (2) alleged falsification of drug tests, (3) procedural due process issues, (4) obstruction of justice, (5) alleged "white supremacy" and "systemic racism," and (6) being denied a better prison job.[4]  It is likewise difficult to discern who Gannaway is targeting with his myriad allegations, as he names innumerable prison officials but does not specify what any official did (or did not do) that purportedly violated *his* civil rights.[5]

The gist of Gannaway's lawsuit, as best as the Court can tell, is that he was the alleged victim of a fabricated drug test (possibly involving a urine screening), which ultimately resulted in denial of parole.[6]  Gannaway does not provide any

---

[3] *See* Doc. 22 at 1-4.
[4] *Id.* at 4 (citations and footnotes omitted).
[5] *See generally* Doc. 1; Doc. 22 at 4.
[6] *See id.* at 2, 4; *see also* Doc. 23 at 1 (indicating that his lawsuit concerns a "false/positive drug & urine test" that resulted in his "original date for being parole[d]" being "taken").

details regarding when this incident occurred, when his parole was denied, who was responsible for the purportedly unlawful conduct, or what remedies—if any—he sought at the prison or state level.

Gannaway also does not expressly state what relief he is seeking in the instant lawsuit (other than possibly the criminal prosecution of prison officials, which this Court cannot grant[7]).  This, too, is a material omission.  If Gannaway is seeking release from prison, he must pursue his claim through habeas corpus, not a civil rights lawsuit.[8]  If he is seeking monetary damages or a form of injunctive relief that does not implicate the fact or duration of his confinement, then a Section 1983 lawsuit is the appropriate procedural vehicle.[9]  Despite these omissions, the Court will endeavor to screen Gannaway's *pro se* pleading.

---

[7] *See United States ex rel. Savage v. Arnold*, 403 F. Supp. 172, 174 & n.2 (E.D. Pa. 1975) ("[C]riminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions.  It has been repeatedly held that the Executive Branch through the Justice Department and U.S. Attorneys is charged with enforcement of federal criminal law and in this area has broad discretion in determ[in]ing whether or not to prosecute.  In the exercise of such discretion U.S. Attorneys are immune from control or interference through mandamus or otherwise by private citizens or by courts." (quoting *Bass Angler Sportsmen Soc. v. U.S. Steel Corp.*, 324 F. Supp. 412, 415 (D. Ala.), *aff'd*, 447 F.2d 1304 (5th Cir. 1971))); *see also Wheeler v. Ulisny*, 482 F. App'x 665, 669 (3d Cir. 2012) (nonprecedential) ("[A] private citizen cannot file a criminal complaint in court nor is there a federal right to require the Government to initiate criminal proceedings."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Kennan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964).

[8] *See Preiser v. Rodriguez*, 411 U.S. 475, 484-86(1973) (explaining that habeas corpus is the exclusive instrument for challenging the fact or duration of confinement).

[9] *See id.* at 494.

3

## II.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[10]  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[11]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[12]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[13]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[14]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to

---

[10]   *See* 28 U.S.C. § 1915A(a).
[11]   *Id.* § 1915A(b)(1).
[12]   *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[13]   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[14]   *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

4

a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[15]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[16] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[17] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[18] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[19] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[20]

Because Gannaway proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[21] This is particularly true when the *pro se* litigant, like Gannaway, is incarcerated.[22]

---

[15] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[16] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[17] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[18] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[19] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[20] *Iqbal*, 556 U.S. at 681.
[21] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[22] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### III.  DISCUSSION

At the outset, the Court observes that it is unclear what type of Section 1983 claim (or claims) Gannaway is attempting to assert.  As noted above, Gannaway briefly mentions, among other issues, falsified drug testing, due process issues with his disciplinary proceeding, interference or "tampering" with incoming legal mail, and racial discrimination.  He vaguely cites the First, Eighth, and Fourteenth Amendments of the Constitution, but does not specify what type of constitutional tort claim or claims he is attempting to assert under those constitutional provisions.

Nevertheless, from the complaint and Gannaway's subsequent filings, it appears that the thrust of his lawsuit is his claim that he was the victim of a fraudulent or fabricated drug test that resulted in his parole being denied.  This allegation could potentially implicate a Fourteenth Amendment procedural due process claim.[23]  If Gannaway is intending to assert such a claim, his current allegations fall short.

### A.  Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[24]  Rather, a Section

---

[23]  The Court is unable to perceive how Gannaway's fabricated-drug-test claim could implicate the First or Eighth Amendment.
[24]  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

6

1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[25] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[26] Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[27]

Gannaway's primary pleading deficiency is his failure to allege personal involvement for most of the prison officials he is attempting to sue. Although he names numerous SCI Camp Hill and Department of Corrections officials in his complaint, he only pleads personal involvement for two corrections officers: "C/o Kauffman," who Gannaway alleges "planted the false positive urine & drug test on inmates," and "Lt. Dicky," who Gannaway claims is under investigation for "tampering with drug testing & obstruction of justice."[28] Kauffman and Dicky are

---

[25] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Rode*, 845 F.2d at 1207).
[26] *Id.* (quoting *Rode*, 845 F.2d at 1207).
[27] *See id.* at 374 (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").
[28] Doc. 1 at 2.

7

the only two Defendants who—under Gannaway's pleading—could be personally involved in the due process violation concerning the allegedly falsified drug tests.

To plausibly plead a Section 1983 claim, however, Gannaway must specify *each* Defendant's personal involvement in the alleged constitutional misconduct. Gannaway's complaint does not do so for nearly all named Defendants. Thus, the Court must dismiss the Section 1983 claims against all Defendants (except Kauffman and Dicky) pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B.  Fourteenth Amendment Procedural Due Process Claim

Gannaway is possibly attempting to assert a Fourteenth Amendment procedural due process claim regarding denial of parole. To plausibly state a Section 1983 claim for infringement of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[29] If a plaintiff cannot identify a protected interest that is "at stake," the analysis is at an end.[30]

---

[29] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).
[30] *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hill*, 455 F.3d at 234-35.

The Supreme Court of the United States has held that the Constitution does not establish a liberty interest in parole that would implicate due process protections.[31] That leaves state law as the only other possible source of a protected liberty interest.[32] Thus, if Gannaway "has a protected liberty interest in some aspect of his parole, it must derive from the Pennsylvania parole statute."[33] In this regard, Pennsylvania inmates seeking parole have a "state law right to have [their] parole applications 'fairly considered.'"[34]

Nowhere in his complaint does Gannaway allege that the Pennsylvania Parole Board did not "fairly consider" his application for parole.[35] Gannaway does not assert what reason or reasons were given for his parole denial, although it appears that he believes that his parole was denied specifically because he failed a drug test (which failed test was fabricated by an actor or actors at SCI Camp Hill). Thus, Gannaway appears to be asserting that his state-law right to fair consideration of his parole application was sabotaged by the intentional misconduct of unidentified SCI Camp Hill officials.

---

[31] *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).
[32] *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state.").
[33] *Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010).
[34] *Id.* (quoting *Jamieson v. Commonwealth, Pa. Bd. of Prob. & Parole*, 495 A.2d 623, 627 (Pa. Commw. Ct. 1985)).
[35] *See id.*

Yet Gannaway's due process allegations lack sufficient detail to plausibly state such a claim. As noted, Gannaway does not allege when the falsified or fabricated drug testing occurred, who was responsible for the purported misconduct,[36] when his parole was denied, the reason (or reasons) given for his parole denial, or any other details that could establish a procedural due process violation by a state actor with respect to his parole application. This is not to say that Gannaway could not amend his pleading to state such a due process claim, only that his initial complaint does not do so.

### C.  Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[37] Gannaway will be granted leave to amend in the event that he can plead facts that would plausibly state a Section 1983 claim against a state actor at SCI Camp Hill.

If Gannaway chooses to file an amended complaint, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth his Section 1983 claim (or

---

[36] Although Gannaway asserts that Kauffman "planted false positive urine & drug test[s] on inmates," he does not allege that Kauffman did so to him. *See* Doc. 1 at 2. This deficiency is material because without an allegation of who took the unconstitutional conduct, there is no one to sue under Section 1983.
[37] *Grayson*, 293 F.3d at 114.

10

claims) in short, concise, and plain statements, and in sequentially numbered paragraphs. Gannaway must leave one-inch margins on all four sides of his pleading.[38] Additionally, he cannot seek relief on behalf of any other inmate or attempt to represent those inmates.[39] He must also cure the defects specifically noted in this Memorandum.

In particular, Gannaway must name proper defendants and *specify* the offending actions taken by each defendant. This step is especially critical for Gannaway, as his initial complaint is devoid of allegations that demonstrate the personal involvement of most of the named Defendants in the purportedly unconstitutional conduct. He must also sign the amended complaint and indicate the nature of the relief he is seeking. This too, is important, because the nature of the relief sought will determine whether Gannaway is requesting habeas corpus relief or pursuing a Section 1983 civil rights lawsuit.

If Gannaway does not timely file an amended complaint, dismissal of his complaint without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

---

[38] *See* LOCAL RULE OF COURT 5.1.
[39] *See* Doc. 22 at 3 & nn.13-14 (explaining that only Gannaway signed the complaint, the other putative plaintiffs did not seek extensions of time to pay the filing fee or move for leave to proceed *in forma pauperis* and were appropriately dismissed, and that Gannaway—as a *pro se* prisoner without a law license—cannot represent other parties in federal court).

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss without prejudice Gannaway's complaint pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted. If no amended complaint is timely filed, dismissal without prejudice will automatically convert to dismissal with prejudice and the Court will close this case. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge