**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHAKUR COBBS GANNAWAY,

Plaintiff,

v.

GOURLEY, *et al.*,

Defendants.

No. 4:24-CV-02115

(Chief Judge Brann)

**MEMORANDUM OPINION**

**SEPTEMBER 24, 2026**

Shakur Cobbs Gannaway filed the instant *pro se* Section 1983[1] action in 2024, alleging constitutional violations by officials at the State Correctional Institution in Camp Hill, Pennsylvania (SCI Camp Hill). The Court dismissed Gannaway's initial complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. Gannaway eventually filed an amended pleading, which is presently before the Court for screening. The Court will dismiss in part Gannaway's amended complaint.

## I. BACKGROUND

Gannaway lodged the instant *pro se* Section 1983 lawsuit in this Court in December 2024, alleging that numerous officials at SCI Camp Hill (where he was

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

then incarcerated) had violated his constitutional rights.[2] Gannaway is no longer imprisoned and is residing at a halfway house in Philadelphia, Pennsylvania.[3] He is proceeding *in forma pauperis*.[4]

Since lodging his "criminal complaint,"[5] which the Court liberally construed as a civil rights lawsuit, Gannaway has struggled to comply with Court orders and to take necessary steps to prosecute his lawsuit. The Court need not rehash those procedural difficulties, as they are outlined in detail in the Court's February 12, 2025 Memorandum Opinion and Order[6] and in its April 8, 2025 Memorandum Opinion.[7]

After extensive procedural delays, Gannaway finally properly moved for leave to proceed *in forma pauperis* and submitted the statutorily mandated initial partial filing fee. The Court then screened his complaint as required under 28 U.S.C. § 1915A(a).

Gannaway's *pro se* complaint was difficult to follow. As noted in this Court's February 12 opinion, his disjointed allegations involved (1) purported legal mail tampering, (2) alleged falsification of drug tests, (3) procedural due process issues, (4) obstruction of justice, (5) alleged "white supremacy" and "systemic

---

[2] Doc. 1.
[3] *See* Doc. 42 ¶¶ 1, 2.
[4] *See* Docs. 8, 10.
[5] *Id.*
[6] *See* Doc. 22 at 1-4.
[7] *See* Doc. 27 at 1-3.

racism," and (6) being denied a better prison job.[8] It was likewise difficult to discern who Gannaway was targeting with his myriad allegations, as he had named numerous prison officials as defendants but did not specify what any official did (or did not do) that purportedly violated *his* civil rights.[9]

The gist of Gannaway's lawsuit, as best as the Court could tell, was that he was the alleged victim of a fabricated positive drug test (possibly involving a urine screening), which purportedly resulted in denial of parole.[10] Gannaway did not provide any details regarding when this incident occurred, when his parole was denied, who was responsible for the allegedly unlawful conduct, or what remedies—if any—he had sought at the prison or state level.[11]

Gannaway also did not expressly state what relief he was seeking in his civil rights lawsuit,[12] other than possibly the criminal prosecution of prison officials, which this Court cannot grant.[13] This, too, was a material omission. As the Court

---

8 *Id.* at 4 (citations and footnotes omitted).

9 *See generally* Doc. 1; *see* Doc. 22 at 4.

10 *See* Doc. 22 at 2, 4; *see also* Doc. 23 at 1 (indicating that his lawsuit concerns a "false/positive drug & urine test" that resulted in his "original date for being parole[d]" being "taken").

11 *See* Doc. 27 at 2-3.

12 *See id.* at 3.

13 *See United States ex rel. Savage v. Arnold*, 403 F. Supp. 172, 174 & n.2 (E.D. Pa. 1975) ("[C]riminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions. It has been repeatedly held that the Executive Branch through the Justice Department and U.S. Attorneys is charged with enforcement of federal criminal law and in this area has broad discretion in determ[in]ing whether or not to prosecute. In the exercise of such discretion U.S. Attorneys are immune from control or interference through mandamus or otherwise by private citizens or by courts." (quoting *Bass Angler Sportsmen Soc. v. U.S. Steel Corp.*, 324 F. Supp. 412, 415 (D. Ala.), *aff'd*, 447 F.2d 1304 (5th Cir. 1971))); *see also Wheeler v. Ulisny*, 482 F. App'x 665, 669 (3d Cir. 2012) (nonprecedential) ("[A] private citizen cannot file a criminal complaint in court nor

explained, if Gannaway was seeking release from prison, he must pursue his claim through habeas corpus, not a civil rights lawsuit.[14] If he was seeking monetary damages or a form of injunctive relief that does not implicate the fact or duration of his confinement, then a Section 1983 lawsuit is the appropriate procedural vehicle.[15]

Despite these material pleading problems, the Court endeavored to screen Gannaway's *pro se* complaint. The first deficiency the Court noted was that Gannaway had failed to allege personal involvement for his Section 1983 claims for most of the defendants named in his complaint.[16] Next, the Court explained that if Gannaway was attempting to assert a Fourteenth Amendment procedural due process claim with respect to the denial of parole, his complaint failed to plausibly allege such a claim against any defendant.[17]

Thus, on April 8, 2025, the Court dismissed Gannaway's Section 1983 complaint but granted him leave to amend.[18] The Court gave Gannaway specific directions for amendment and warned him that failure to timely file an appropriate

---

is there a federal right to require the Government to initiate criminal proceedings."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Kennan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964).

[14] *See* Doc. 27 at 3 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484-86 (1973) (explaining that habeas corpus is the exclusive instrument for challenging the fact or duration of confinement)).

[15] *See id.* (citing *Preiser*, 411 U.S. at 494).

[16] *See id.* at 6-8.

[17] *Id.* at 8-10.

[18] *See id.* at 10-11; Doc. 28.

amended pleading would result in the dismissal without prejudice automatically converting to dismissal with prejudice and the closure of his case.[19]

The Court mailed copies of the April 8, 2025 opinion and order to the SCI Camp Hill address Gannaway had provided. However, it appears that Gannaway had been transferred to a halfway house in Philadelphia, Pennsylvania, shortly before those documents were mailed.[20] Gannaway had failed to inform the Court of his change of address in writing (as he was required to do),[21] so the documents eventually were returned to sender by the United States Postal Service.[22] In the meantime, Gannaway alleges that he contacted the Clerk's Office via telephone on several occasions (according to Gannaway, he called the Clerk's Office on April 12, 19, and 24), and was informed that his case had been dismissed.[23]

Gannaway eventually submitted an undated letter, received by the Court on April 30, 2025, in which he explicitly stated that he intended the letter to be "a notice of appeal to the United States Court of Appeals Third Circuit."[24] Earlier that day, the Court had dismissed Gannaway's case with prejudice for failing to file an amended complaint.[25] The Clerk of Court treated Gannaway's letter as a

---

19 *See* Doc. 27 at 11.
20 *See* Doc. 32 at 1.
21 *See* Doc. 3 at 1; Doc. 3-2 at 3-4.
22 *See* Docs. 29, 30.
23 *See* Doc. 32 at 1.
24 *Id.* The envelope of this letter likewise stated, "notice of appeal." *See id.* at 2.
25 Doc. 31.

notice of appeal, as he expressly requested, and transferred that notice and the certified record to the United States Court of Appeals for the Third Circuit.[26]

On appeal, the Third Circuit affirmed the dismissal of Gannaway's complaint for failure to state a claim[27] but found that—due to his transfer to a halfway house and his allegations that he did not receive his mail from SCI Camp Hill—the district court should consider whether Gannaway should be provided with additional time to amend his pleadings.[28] The panel thus vacated this Court's judgment "to the extent it gave the dismissal of Gannaway's complaint prejudicial effect," and remanded the matter to this Court to determine whether Gannaway should be given an extension of time to file an amended complaint.[29]

On February 10, 2026, the day after receiving the Third Circuit's judgment, the Court reopened Gannaway's case and entered an order granting him an extension of 21 days to file an amended complaint.[30] The Court explicitly informed Gannaway that he must adhere to the directions for amendment provided in the Court's April 8, 2025 Memorandum and Order.[31] The Court also noted that courtesy copies of the April 8, 2025 Memorandum and Order were remailed to his halfway house address on April 30, 2025,[32] and the Court likewise provided an

---

26 *See* Doc. 32 & Docket Annotation.
27 *See* Doc. 38-2 at 4.
28 *See id.* at 4-5.
29 *See id.*
30 *See* Doc. 35; Doc. 36.
31 *See* Doc. 35 at 1 ¶ 2.
32 *See id.* at 1 n.3.

additional courtesy copy of those documents to Gannaway with the February 10, 2026 Order, using Gannaway's most recent mailing address obtained from the Third Circuit's docket.[33]

More than 21 days passed, but Gannaway failed to file an amended complaint or any other communication with the Court. Thus, on March 5, 2026, the Court entered a follow-up Order,[34] *sua sponte* giving Gannaway 14 additional days to file an amended complaint. The March 5 Order expressly warned Gannaway that if no amended complaint were timely filed, the Court would once again dismiss the case with prejudice.[35]

Instead of taking the simple step of filing an amended complaint, Gannaway called the Clerk's Office on March 20, 2026 (after his amended complaint deadline had already passed), and left a voicemail asking, *inter alia*, for additional time to amend his pleadings.[36] Such telephonic requests are improper.[37] Nevertheless, the Court—once more erring on the side of caution—issued an Order on March 24, 2026, extending the previous deadline (March 19, 2026) by an *additional* 21 days and thus requiring Gannaway to file an amended complaint by April 9, 2026.[38] That Order also admonished Gannaway that all motions must be in writing and no

33 *See id.* at 2 ¶ 3 & Docket Annotation foll. Doc. 35.
34 Doc. 37.
35 *Id.* at 2 ¶ 2.
36 *See* Doc. 39 at 2.
37 *See* LOCAL RULE OF COURT 7.1 (requiring motions to be in writing).
38 *See* Doc. 39 at 2 ¶ 1.

further requests would be entertained via telephone.[39] Gannaway was once again informed that if he failed to timely file an amended complaint by April 9, his case would be dismissed and closed.[40]

Later that same day (March 24, 2026), the Court received a combined motion for an extension of time to file an amended complaint and for appointment of counsel from Gannaway.[41] As the Court had already addressed the extension of time, it focused solely on Gannaway's request for appointment of counsel. The Court denied that motion without prejudice on March 26, 2026.[42] Specifically, the Court observed that because Gannaway's initial complaint had been dismissed for failure to state a claim for relief, and because he had still not filed an amended pleading despite being given multiple extensions of time to do so, the Court was unable to determine the threshold issue of whether his Section 1983 lawsuit had "arguable merit in fact and law."[43] The Court further explained that Gannaway had failed to adequately establish his need for an attorney, as his single, unadorned assertion that his case was "complex" was belied by his original complaint.[44]

The April 9, 2026 deadline for an amended complaint once again came and went. No amended complaint was filed.

---

39 *Id.* at 2 ¶ 2.
40 *Id.* at 2 ¶ 3.
41 Doc. 40. The letter also discussed an injunction for matters unrelated to the instant lawsuit. *See id.* at 2 ¶ 10.
42 Doc. 41.
43 *See id.* at 2 (quoting *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993)).
44 *See id.* at 2-3.

On April 16, 2026, the Court received correspondence from Gannaway dated April 8, 2026, and titled "Objection to Denying My Motion for Extension of Time and My Stage 4 Cancer that was Neglected by the Listed Defendants and the Guadenzia [sic] Halfway House Disregarding My Serious Medical Needs."[45] In this four-page, small font, single-spaced document, Gannaway disputed the Court's March 26, 2026 denial of appointment of counsel, requested that the Court entertain oral argument instead of requiring him to file an amended complaint, and raised numerous issues that should have been contained in an amended pleading.[46]

The Court issued a responsive Memorandum Opinion and Order on April 29, 2026.[47] The Court overruled Gannaway's objections, declined to revisit his motion for appointment of counsel, denied his request for oral argument, reaffirmed that he must file a written amended complaint (like all other civil litigants), and warned Gannaway to refrain from further impugning the Court and its handling of his case, particularly in view of the extensive leeway he had been provided regarding filing deadlines and enlargements of time.[48] Gannaway was then granted *yet another* extension to file an amended complaint, creating a due date of May 22, 2026.[49]

---

45 Doc. 42.
46 *See generally id.*
47 Doc. 43.
48 *See id.* at 9-10.
49 *Id.* at 10 ¶ 4.

Gannaway finally complied and filed a written amended complaint on May 21, 2026. His amended complaint appears to be a combination of two documents: (1) a typewritten document labeled "Shakur Cobbs Ganaway [sic] Amended complaint to the best of my knowledge of what relief I hope to receive for the following reasons"[50]; and (2) a handwritten form civil complaint.[51] Gannaway attached a copy of discharge records from Temple University Hospital, indicating that he was diagnosed with lung cancer in mid-May 2025.[52] He alleges that he has "stage 4 cancer" with metastasis to other parts of his body.[53]

Like his other filings, Gannaway's amended complaint is difficult to follow. The gravamen of his amended pleading appears to be that he was allegedly provided constitutionally inadequate medical care while incarcerated in SCI Camp Hill.[54] This is a new claim that was not asserted in his original complaint, likely because his initial complaint was filed in December 2024, approximately six months before his cancer diagnosis. In this way, it appears that Gannaway is attempting to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d), although he failed to comply with Rule 15(d)'s requirement of

---

50 Doc. 44.

51 Doc. 44-1.

52 *See generally* Doc. 44-3. Gannaway also included another typewritten document, which was drafted in August 2024 while he was still incarcerated at SCI Camp Hill. *See* Doc. 44-2. This document appears to be part of a different lawsuit, as Gannaway mentions orders and a dismissal without prejudice that is unrelated to the case at bar. *See id.* at 2.

53 Doc. 44 at 1; Doc. 44-1 at 4.

54 Doc. 44 at 1-3.

moving for leave to file such a pleading.[55] Gannaway's amended complaint also appears to reassert his Fourteenth Amendment due process claim alleging that he was wrongfully denied parole because of a falsified drug test.[56]

As best as the Court can tell, Gannaway is suing 24 defendants: Superintendent Michael Gourley, C/O Kauffman, Lt. Dicky, Tanya Heist, Lt. Gilbert, DSFM Randy Evans, William Nicklow, Lt. Smolke, William Traci, Major Jason Albert, Unit Manager Douglas Benner, CCPM Bradley Ritchey, Deborah L. Carpenter, Hearing Examiner Mr. Schneck, Darleen Leech, Captain Baptist, Lt. Ferrington, Ms. Mihal, Chief Hearing Examiner Zachary Moslak, John Doe, Jane Doe, "Guadenzia [sic]," SCI Camp Hill Medical Department, and SCI Rockview Medical Department.[57] Gannaway appears to seek unspecified monetary damages,[58] as well as injunctive relief in the form of being discharged from his halfway house.[59] His amended (or rather, supplemental) complaint is now properly before the Court for screening.

## II. STANDARDS OF REVIEW

---

55 *See* FED. R. CIV. P. 15(d) ("*On motion and reasonable notice*, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time." (emphasis added)).

56 *See* Doc. 44 at 3; Doc. 44-1 at 2, 4; Doc. 44-2 at 1.

57 *See* Doc. 44-1 at 1-3.

58 *See, e.g.*, Doc. 44-1 at 5 (asking the Court to determine what his alleged injuries are "worth").

59 *See* Doc. 44 at 5.

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court "shall dismiss" an *in forma pauperis* case or claim "at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted[.]"[60] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard of review to Section 1915(e)(2)(B)(ii) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[61]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[62] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[63] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[64]

---

60 28 U.S.C. § 1915(e)(2)(B)(ii).

61 *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

62 *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

63 *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

64 *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[65] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[66] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[67] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[68] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[69]

Because Gannaway proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[70]

## III. DISCUSSION

Upon review of Gannaway's amended complaint, the Court finds that most claims and Defendants must be dismissed from this action for failure to state a

65 *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
66 *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
67 *Id.* (quoting *Iqbal*, 556 U.S. at 679).
68 *Id.* (quoting *Iqbal*, 556 U.S. at 679).
69 *Iqbal*, 556 U.S. at 681.
70 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).

claim for relief. The Court will address Gannaway's numerous pleading deficiencies in turn.

### A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[71] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[72] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[73] Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[74]

As noted above, Gannaway attempts to sue nearly two dozen individual Defendants. However, he does not plausibly allege personal involvement for many

---

71 *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

72 *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

73 *Id.* (quoting *Rode*, 845 F.2d at 1207).

74 *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

of them, despite being informed of this material pleading deficiency after he filed his original complaint.[75]

First, as to defendants Heist, DSFM Evans, Nicklow, Traci, Major Albert, Unit Manager Benner, CCPM Ritchey, Hearing Examiner Schneck, Leech, Captain Baptist, Lt. Ferrington, John Doe, and Jane Doe, Gannaway does not allege *any* personal involvement whatsoever. In fact, these Defendants' names appear only in the captions or defendant-identification section of the amended complaint.

Next, as to Lt. Gilbert, Lt. Smolke, and Ms. Mihal, Gannaway alleges only that they were superior officers or in charge of certain departments.[76] Yet there is no vicarious liability (or *respondeat superior*) under Section 1983. Lt. Gilbert, Lt. Smolke, and Ms. Mihal cannot be held vicariously liable for the alleged constitutional misconduct of others simply because of their supervisory positions; rather, Gannaway must plausibly allege how these Defendants' own conduct violated his constitutional rights. His amended complaint does not do so.

To plausibly plead a Section 1983 claim, Gannaway must specify *each* Defendant's personal involvement in the alleged constitutional misconduct. Gannaway has once again failed to allege personal involvement for 16 of the 21 individual Defendants named in his lawsuit. So the Section 1983 claims against

---

75 *See* Doc. 27 at 6-8.

76 *See* Doc. 44 at 1, 2 (alleging only that Lt. Gilbert was "in charge of the medical department," that Lt. Smolke is the "acting superior officer in the Restrictive Housing Unit (RHU)," and that Ms. Mihal was "in charge of" the medical department and "fail[ed] to supervise" others).

these Defendants must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

### B. Claims Against Institutional Defendants

In his amended complaint, Gannaway sues SCI Camp Hill's Medical Department, SCI Rockview's Medical Department, and "Guadenzia [sic]." These entities, however, are not "persons" who can be sued under Section 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by *a person* acting under color of state law."[77] Only "persons" are subject to suit under Section 1983; entities like the prison medical departments and a halfway house do not qualify.[78] Additionally, at least as to the state prison medical departments, any claim against a state agency is akin to suing the state itself, and such claims are generally barred

---

77 *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (emphasis added) (citing *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983)).

78 *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-65, 71 (1989) (explaining that a state is not a "person" for Section 1983 purposes); *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (holding that "New Jersey Prison Medical Department" was a state agency and not a "person" under Section 1983); *Slagle v. County of Clarion*, 435 F.3d 262, 264 n.3 (3d Cir. 2006) (affirming on other grounds and observing that district court properly "dismissed Clarion County Jail as a defendant in this case," quoting district court's reasoning that "'it is well established in the Third Circuit that a prison is not a "person" subject to suit under federal civil rights laws'"); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 554 (M.D. Pa. 2007) (finding that PrimeCare Medical is not a "person for purposes of Section 1983" and thus not subject to liability under that statute); *Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (nonprecedential) (dismissing Section 1983 claims against prison and Department of Corrections because they "are not persons subject to suit under" Section 1983).

by Eleventh Amendment sovereign immunity.[79] Thus, the Section 1983 claims against the medical departments and the halfway house will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### C. Eighth Amendment Medical Indifference

The gravamen of Gannaway's amended complaint appears to be Eighth Amendment deliberate indifference to serious medical needs. To the extent Gannaway is attempting to plead this constitutional tort, he has not done so.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[80] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[81] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[82]

---

79 *See Harper v. Jeffries*, 808 F.2d 281, 284 n.4 (3d Cir. 1986) (noting that any Section 1983 action by prisoner against Pennsylvania Parole Board is barred by Eleventh Amendment); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) ("The eleventh amendment's bar [against civil rights suits in federal court targeting a state] extends to suits against departments or agencies of the state having no existence apart from the state."); *Foye*, 675 F. App'x at 215.

80 *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

81 *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

82 *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[83] Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[84] Claims sounding in mere medical negligence will not suffice.[85]

Gannaway has stated a serious medical need with respect to his diagnosis of metastatic lung cancer. Nevertheless, any Eighth Amendment medical indifference claim fails as to the other elements of this constitutional tort.

First, as to the 16 individual Defendants identified for dismissal in Section III(A) above, Gannaway has plainly failed to allege that they acted with deliberate indifference to his serious medical needs because he has not alleged any personal involvement by these Defendants. Without alleging each Defendant's purported unconstitutional action or inaction, it follows that Gannaway has not plausibly alleged that any of these Defendants acted with deliberate indifference to a serious medical need.

---

83 *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

84 *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

85 *Rouse*, 182 F.3d at 197.

Second, Gannaway has failed to plausibly allege deliberate indifference as to Michael Gourley, the Superintendent of SCI Camp Hill.[86] Superintendent Gourley is the only individual Defendant for whom Gannaway has provided allegations of personal involvement in medical care. However, the entirety of Gannaway's allegations against Superintendent Gourley is that Gourley and "his medical administration knew about [Gannaway's] serious medical condition of stage 4 cancer" and "totally ignored [his] condition and even deceive[d] [him] and told [him he] didn't have any signs of cancer."[87] Gannaway's allegations are both conclusory and implausible. They are conclusory because they merely conclude—without alleging any supporting facts—that Superintendent Gourley had knowledge of Gannaway's medical diagnosis and treatment (or lack thereof). They are implausible because Gannaway has failed to allege any reason why the superintendent of a state prison would keep tabs on an individual prisoner's medical condition or treatment, especially when there are entire medical departments in the prisons dedicated to inmate medical care.

Third, Gannaway asserts that "[t]hey" (unidentified medical providers) "sent me out to a medical doctor in Harrisburg claiming I didn't have any form of cancer."[88] This allegation implies that Gannaway was transferred to an outside

---

86 *See* Doc. 44 at 1.
87 *Id.*
88 *Id.*

physician for care, which allegation does not implicate deliberate indifference. Additionally, this assertion implies that a provider—possibly an outside physician or a medical provider at SCI Camp Hill—misdiagnosed Gannaway's symptoms. However, an allegation of a misdiagnosis sounds only in medical malpractice, not deliberate indifference to serious medical needs,[89] and thus does not state a Section 1983 claim.[90]

Finally, Gannaway appears to allege that "medical administration" or "the medical department" ignored his symptoms and "deceive[d]" him by telling him he did not have signs of cancer.[91] Once again, such allegations lack the personal involvement of any Defendant. They likewise implicate only medical negligence insofar as Gannaway appears to allege that unspecified medical staff did not recognize that his symptoms ("a lot of coughing up flem [sic]" and "constant runny noses") could be signs of lung cancer.[92]

In sum, Gannaway does not allege personal involvement by any Defendant in his medical care except Superintendent Gourley. Thus, as to all other individual Defendants, there is a glaring absence of facts showing deliberate indifference to serious medical needs. Moreover, even as to Superintendent Gourley, Gannaway's

---

[89] *See Weigher v. Prison Health Servs.*, 402 F. App'x 668, 670 (3d Cir. 2010) (nonprecedential) ("We agree with the District Court that such a claim of misdiagnosis would sound in negligence as a malpractice suit, and does not constitute deliberate indifference.").

[90] *See Rouse*, 182 F.3d at 197.

[91] Doc. 44 at 1.

[92] *Id.*

allegations are both conclusory and implausible. Finally, Gannaway has failed to plead causation for any Defendant, as he has not plausibly alleged that any named Defendant's deliberate indifference caused him harm. Accordingly, all Eighth Amendment claims of deliberate indifference to serious medical needs must be dismissed under Section 1915(e)(2)(B)(ii) for failure to state a claim.

### D. Fourteenth Amendment Procedural Due Process

Gannaway's amended complaint, like his original complaint, is difficult to parse. In his initial complaint, Gannaway seemed to allege that his application for parole was denied based on a fabricated drug test. In his amended complaint, it appears that Gannaway is alleging that he was actually granted parole by the Pennsylvania Parole Board, with a date certain for parole set as May 29, 2024, and that because of a falsified drug test and related misconduct, his grant of parole was rescinded by the Parole Board in April 2024.[93] Ultimately, Gannaway was not paroled until April 9, 2025.[94]

Gannaway does not state in any version of his pleadings what type of constitutional claim he is attempting to assert with regard to rescission of the grant of parole. After careful consideration, the Court again concludes that the only possible Section 1983 claim Gannaway could be asserting sounds in Fourteenth Amendment procedural due process.

---

93 *See* Doc. 44-2 at 1.
94 *See* Doc. 44 at 2.

To state a Section 1983 claim for infringement of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[95] If a plaintiff cannot identify a protected interest that is "at stake," the analysis is at an end.[96]

The Supreme Court of the United States has held that the Constitution does not establish a liberty interest in parole that would implicate due process protections.[97] That leaves state law as the only other possible source of a protected liberty interest.[98] Thus, if Gannaway "has a protected liberty interest in some aspect of his parole, it must derive from the Pennsylvania parole statute."[99] In this regard, Pennsylvania inmates seeking parole have a "state law right to have [their] parole applications 'fairly considered.'"[100]

It is plausible that Gannaway has identified a protected liberty interest: the initial grant of parole by the Parole Board. With respect to the rescission of this grant of parole, Gannaway discusses conduct by four prison officials: Deborah

---

95 *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).
96 *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hill*, 455 F.3d at 234-35.
97 *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).
98 *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state.").
99 *Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010).
100 *Id.* (quoting *Jamieson v. Commonwealth, Pa. Bd. of Prob. & Parole*, 495 A.2d 623, 627 (Pa. Commw. Ct. 1985)).

Carpenter, Zachary Moslak, C/O Kauffman, and Lt. Dicky. The Court will examine the sufficiency of the allegations against these Defendants.

As to Deborah Carpenter, Gannaway alleges that she "encourage[d] the planted Suboxones allegedly found in [his] system."[101] This single allegation is entirely conclusory and contains no facts on which Section 1983 liability for a procedural due process violation could obtain. Stated differently, this solitary sentence fails to *plausibly* allege constitutional misconduct by Carpenter.

As to Zachary Moslak, Gannaway asserts only that he "was bias[ed] in handling" Gannaway's misconduct that stemmed from the alleged false positive drug test.[102] This single assertion is likewise entirely conclusory and wholly insufficient to show a constitutional violation with respect to the Fourteenth Amendment's Due Process Clause.

Finally, Gannaway alleges that he was denied parole in May 2024 because Lt. Dicky and C/O Kauffman "decided they wanted to cut corners to save the department of corrections money to violate the inmates['] serious medical needs and keep them with cancer or any sickness without worrying about the treatment it will take to take care of these inmates or let them sit in prison without knowing their conditions, especially their sickness."[103] From this statement, along with

---

[101] Doc. 44 at 1.
[102] *Id.* at 3.
[103] *Id.*

Gannaway's other documents filed in this case, it can be inferred that Gannaway is alleging that C/O Kauffman and Lt. Dicky were responsible for his false positive drug test that resulted in a misconduct and, ultimately, rescission of the Parole Board's grant of parole.[104] While Gannaway's allegations leave much to be desired, the Court will liberally construe his *pro se* pleading in this manner and finds that he has alleged a procedural due process violation.

In summary, Gannaway has plausibly alleged a Fourteenth Amendment due process claim against C/O Kauffman and Lt. Dicky with respect to rescission of the grant of parole. The Court will dismiss this claim as to all other Defendants pursuant to Section 1915(e)(2)(B)(ii) for failure to state a claim.[105]

### E. Official Capacity Claims

Gannaway sues all Defendants in their individual and official capacities.[106] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity. Additionally, the official capacity claims fail because Gannaway has not sought appropriate prospective equitable relief.

---

[104] *See id.*; Doc. 44-1 at 2; Doc. 44-2 at 1, 2.

[105] Gannaway also appears to imply that he was treated unfairly based on "the color of [his] skin." *See* Doc. 44 at 3. However, he does not provide any facts to establish discriminatory treatment based on race (or any other protected trait, for that matter). Nor does he allege that similarly situated prisoners of a different race were treated better than him with respect to either medical care or parole. So to the extent that Gannaway is attempting to shoehorn an equal protection claim into his Fourteenth Amendment allegations, that attempt fails.

[106] *See* Doc. 44 at 5.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[107] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[108] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[109] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[110]

Gannaway appears to seek monetary damages. To the extent these damages are sought against state-actor Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity. And while Gannaway also seeks injunctive relief in the form of being discharged from his halfway house, that type of habeas relief is not available in a Section 1983 action.[111] Thus,

---

107 U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

108 *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

109 *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

110 *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

111 *See Preiser*, 411 U.S. at 484-86 (explaining that habeas corpus is the exclusive instrument for challenging the fact or duration of confinement)).

Gannaway's official capacity claims will also be dismissed for failure to state a claim for relief.

### F. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[112] Further leave to amend will be denied because Gannaway has failed to cure numerous deficiencies with his pleadings even after "amendments previously allowed."[113] Gannaway, moreover, has frequently failed to comply with previous orders regarding amendment, creating excessive delay that could be prejudicial to Defendants.

This case, consequently, will proceed on the following Section 1983 claim only: individual capacity Fourteenth Amendment procedural due process against defendants C/O Kauffman and Lt. Dicky with respect to the Parole Board's rescission of its initial grant of parole to Gannaway. All other Section 1983 claims will be dismissed.

---

112 *Grayson*, 293 F.3d at 114.

113 *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss in part Gannaway's amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge